IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JASON WILCOXEN, individually and on behalf of all others similarly situated, known and unknown,

    *Plaintiff*,

  v.

THE CHEMOURS COMPANY, and THE CHEMOURS COMPANY FC, LLC,

    *Defendant.*

No. 1:23-cv-01416-SB

Daniel Charles Herr, LAW OFFICE OF DANIEL C. HERR LLC, Wilmington, Delaware; Hans A. Nilges, Robi J. Baishnab, NILGES DRAHER LLC, North Canton, Ohio; Matthew J.P. Coffman, COFFMAN LEGAL, LLC, Columbus, Ohio.

*Counsel for Plaintiff.*

Lauren E.M. Russell, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Eric W. Iskra, Eric E. Kinder, SPILMAN THOMAS & BATTLE, PLLC, Charleston, West Virginia.

*Counsel for Defendant.*

**MEMORANDUM OPINION**

March 27, 2025

BIBAS, *Circuit Judge*, sitting by designation.

As litigation proceeds, plaintiffs must bear heavier burdens. But those burdens are light early on. Jason Wilcoxen wants to certify a class conditionally under the Fair Labor Standards Act, which would let him send notice to potential plaintiffs who could opt in. I partially grant his motion. Although his burden is light, he carries it only for part of his proposed class. Later, after fact discovery, it will grow heavier. Then, final certification may prove inappropriate for the rest of the class. But Wilcoxen gets to proceed to discovery before I can decide that.

### I. WILCOXEN SAYS CHEMOURS EMPLOYEES ARE UNDERPAID

Wilcoxen worked for the Chemours Company for three years. Compl., D.I. 1, ¶ 6. He was supposed to be paid by the hour, but he alleges that Chemours made him and its other employees put on work clothes and protective equipment *before* they could clock in. *Id.* ¶¶ 29, 32, 39. If true, that would violate a basic legal principle in the Act: "Hourly employees earn hourly pay." *Sec'y, U.S. Dep't of Lab. v. E. Penn Mfg. Co.*, 123 F.4th 643, 646 (3d Cir. 2024). So Wilcoxen sued Chemours on behalf of all similarly situated employees. 29 U.S.C. §§ 207(a)(1), 216(b); Compl. ¶ 45. He now moves to conditionally certify a class of employees from four Chemours facilities: Washington Works, Corpus Christi, Louisville Works, and Chambers Works. D.I. 47 at 1.

### II. I PARTIALLY GRANT WILCOXEN'S MOTION TO CERTIFY

Wilcoxen must get through two stages to certify the class: the conditional and final stages. We are now at the conditional one, where Wilcoxen must ask the court for permission to notify all potential plaintiffs who might want to opt in. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012). Granting conditional certification

is an "exercise of [the district court's] discretionary power." *Id.* (internal quotation marks omitted).

For now, Wilcoxen need not show much. All that is required is "a modest factual showing—something beyond mere speculation"—that connects a single employer policy to an alleged harm to the class. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). So I cannot yet resolve factual disputes or rule on the merits. *Archer v. Defs., Inc.*, No. 18-470, 2018 WL 5962470, at *3 (D. Del. Nov. 14, 2018).

But before I get into whether Wilcoxen carried that light burden, I must address Chemours's argument that it could not have had a unified policy because this case involves multiple plants, each with its own policy. D.I. 49 at 11–13. That argument fails. Chemours cites a series of district court cases. But these cases are not relevant. Some of them concern only the second stage of certification. *See, e.g.*, *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008); *Johnson v. TGF Precision Haircutters, Inc.*, No. H-03-3641, 2005 WL 1994286, at *1 (S.D. Tex. Aug. 17, 2005). And others, while procedurally relevant, are still inapt because those courts applied a more stringent test than that used in the Third Circuit. *See, e.g.*, *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007). I decline to apply that stricter test and instead follow the approach of courts in this circuit, which require only a modest showing of a common policy or practice.

Wilcoxen submits three types of evidence to make that showing. First, he offers three sworn declarations by employees (one of them from himself). D.I. 48-1 at 7–15.

3

Second, he offers the results of a survey sent to workers, which got eleven responses. *Id.* at 35–50. And third, he points to Chemours's alleged admission in an answer to an interrogatory. *Id.* at 18.

As explained below, Wilcoxen's evidence does not suggest a company-wide policy of not paying workers for time spent putting on protective equipment. But it does imply that two plants had this policy. So I conditionally certify the class of workers at those plants but not elsewhere. I consider the sworn declarations, the survey responses, and the interrogatory answer in turn.

*First*, the declarations all allege a generally similar policy: not paying workers for the time they spend donning and doffing protective equipment. *See id.* at 7–15. More importantly, they allege that not only did Chemours not pay the declarant for this time, but that it also failed to pay "many other … workers" at these plants. *Id.* at 8–9, 11–14. But these declarations cover only two Chemours plants: Washington Works and Chambers Works. Still, they suggest that Washington Works and Chambers Works shared a similar policy that violated the Act in the same way—so on the basis of these declarations, I conditionally certify a class of workers at those two plants.

Chemours argues that the declarations are *too* similar, suggesting that they were "not tailored to the personal knowledge of each declarant." D.I. 40 at 15. But that does not matter. Courts in this circuit routinely find that virtually identical declarations suffice at this early stage. *See, e.g.*, *Archer*, 2018 WL 5962470 at *2 n.2 ("Defendant alleges that because these declarations are 'cookie-cutter,' the Court should disregard them as factual support … [but] [t]his is simply further evidence of a common policy

4

or treatment of the proposed class."); *Harris v. Rebelz Club, LLC*, No. 22-cv-00111, 2022 WL 2792200, at *5 (M.D. Pa. July 15, 2022) ("Although the Defendants' characterization of the declarations is accurate—they are, indeed, virtually identical—that is of no consequence."). Although the declarations may lack credibility on closer examination, that sort of analysis belongs at the final stage of class certification.

But though Wilcoxen has met his burden for Washington Works and Chambers Works, his other evidence suggests neither a company-wide policy nor a similar plant-wide policy at the other plants that the evidence covers.

*Second*, the survey data do not clear this bar. In addition to the plants where Wilcoxen has already met his burden, these surveys contain responses from the Louisville Works and the Corpus Christi plant. But only one worker at the Louisville Works responded to the survey, while only two did at the Corpus Christi plant. D.I. 48-1 at 47–50. True, all three respondents said that they put on personal protective equipment before clocking in. *Id.* But unlike the declarations, the survey did not ask whether these respondents knew whether anyone else at these plants was in the same boat. That leaves evidence of only one worker at one plant and two workers at the other who even plausibly fit into Wilcoxen's purported class. And Wilcoxen got only three positive responses despite sending his survey to everyone whom Chemours listed as working at either plant. *Id.* at 50. The experience of one or two workers, without allegations about anyone else, does not suggest a common policy that extended to the Louisville Works or Corpus Christi plants.

5

*Third*, Chemours argues that Wilcoxen's third piece of evidence—the interrogatories—is deficient. I agree. Wilcoxen tries to argue that Chemours *conceded* that a company-wide policy requires workers to put on and take off protective gear outside of working hours. D.I. 48 at 13. But Chemours conceded only that in "certain situations, Operators may be required" to don and doff protective equipment off the clock, not that a uniform policy mandates this. D.I. 33-4 at 3. That is plainly not a blanket concession, so I do not consider it.

Thus, Wilcoxen has carried his burden only for the Washington Works and Chambers plants. But he has not shown enough for the Louisville and Corpus Christi plants. For those, he offers no declaration and has at most a couple of survey responses claiming that respondents were not paid for putting on their work equipment. But the responses do not say that other workers were treated similarly and so do not suggest that this was plantwide policy. D.I. 48-1 at 47–50. So Wilcoxen has likewise failed to suggest a company-wide policy of not paying for this time. Although not much is required to make it past this stage, Wilcoxen must at least make a *showing*. He has not.

*****

The Act imposes only a light burden at this early stage of litigation, but the plaintiff still must bear it. Wilcoxen has done so for two of the four plants, and so I partially grant his motion for conditional certification. This case may move on to discovery. At final certification, my analysis is much more searching. Then, I can resolve factual disputes and make "a conclusive determination as to whether each plaintiff who has

6

opted in to the collective action is in fact similarly situated to the named plaintiff." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). It now remains to be seen whether Wilcoxen's accusations stand up to this more serious scrutiny.